UNITED STATES of America, Plaintiff,

v.

John BEST, Paul Conarty, and Gregory Bewick, Defendants.

No. 86 CR 442.

United States District Court,
N.D. Illinois, E.D.

May 18, 1987.

Anton R. Valukas, U.S. Atty. by Susan Bogart, William R. Hogan, Jr., Asst. U.S. Attys., Chicago, Ill., on behalf of plaintiff.

George P. Lynch, Chicago, Ill., on behalf of defendant Best.

James S. Montana, Jr., Susan G. Feibus, Pierce, Lydon, Griffin & Montana, Chicago, Ill., on behalf of defendant Bewick.

Leland Shalgos, Chicago, Ill., on behalf of defendant Conarty.

## ORDER

BUA, District Judge.

This order concerns defendants' joint motion to dismiss Counts 3, 9, 10, 11, 12, 25, 26 and 27 of a Special April 1984 Grand Jury indictment returned on March 4, 1987. For the reasons stated herein, defendants' motion is denied.

## I. FACTS

Defendants are charged in a 35–count indictment with various offenses including mail fraud in connection with their duties as employees of American Heritage Savings and Loan Association (Heritage), in Bloomingdale, Illinois. The mail fraud violations alleged in Counts 3, 9, 10, 11, 12, 25, 26 and 27 of the indictment concern the mailing of certain recorded documents from the Cook County Recorder of Deeds to Heritage. According to the indictment, these mailings were made in furtherance of defendants' mail fraud scheme to defraud the shareholders of Heritage, the Federal Savings and Loan Insurance Corporation (FSLIC) and the Federal Home Loan Bank Board (FHLBB) of their right to have the affairs of Heritage conducted honestly, fairly, and free from corruption, dishonesty, fraud, and conflicts of interest.

One of the schemes alleged in the indictment concerns defendants' attempts to conceal the true financial condition of Heritage by engaging in transactions structured to generate illusory profits. Allegedly, defendants made approval of certain commercial loans to individuals of questionable credit worthiness contingent on purchasing real estate owned (REO) by Heritage with Heritage financing. Heritage acquired REO by foreclosing on delinquent mortgages and thus carried REO on its books as a nonincome earning asset. To enable Heritage to dispose of REO at a profit and bring current delinquent loans, defendants sold REO to the borrowers at prices far above actual market value. Aside from creating a false picture of financial stability aimed at preventing intervention by the FSLIC, these land sale/loan transactions facilitated a second aim of the scheme to defraud. The indictment alleges that by inflating the price of REO and assuring financing to the borrowers, defendants solicited and received unlawful commissions bonuses and kickbacks from the proceeds of the loans.

To conceal the nature and scope of their activities, the indictment charges defendants with committing the following acts:

a) causing loan settlement documents to be prepared which concealed the actual recipients of the loan proceeds including the defendants;

b) extending or "rolling over" the dates upon which payments were due on the commercial loans and loan granted for the purchase of REO, thereby delaying foreclosure proceedings and the reporting of losses by Heritage;

c) making false statements concerning these loan transactions to the examiners of the FHLBB;

d) concealing the true facts of the loan transactions including the credit worthiness of the borrowers and the adequacy of the security for the loans from other members of the loan committee and Board of Directors;

e) recording the deeds to the properties which were the subject of these loan transactions.

## II. DISCUSSION

■ To prove a violation of the mail fraud statute, the government must show that the charged mailings are "for the purpose of executing such schemes" and are causally linked to the schemes' success. *United States v. Lane*, 474 U.S. 438, ——-——, 106 S.Ct. 725, 733–34, 88 L.Ed.2d 814 (1986); *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). Mailings are within the statute if they "were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." *Lane*, 474 U.S. at ——, 106 S.Ct. at 733. Thus, violation of the mail fraud statute can occur after the scheme to defraud has been completed if the subsequent mailings facilitate concealment of the scheme. *Id.* at ——, 106 S.Ct. at 734.

■ The issue presented by defendants' motion to dismiss is whether mailings of recorded documents from the recorder's office to Heritage were causally related to the success of defendants' scheme and designed to postpone an ultimate complaint to the authorities, thereby making apprehension less probable than if no mailing had occurred. Defendants assert the charged mailings are not causally related to the alleged scheme because they resulted from a wholly innocent act consistent with proper lending and legal practice. After the questioned loans were made and proceeds disbursed, deeds, mortgages, and other documents were recorded with the Recorder of Deeds and returned by mail to Heritage. Defendants argue that because the same sort of mailings would occur regardless of whether any scheme existed, the mailings could not have been in furtherance of any scheme to defraud the Heritage shareholders, FSLIC or FHLBB.

In motioning to dismiss the mail fraud counts, defendants rely heavily on the recent Seventh Circuit decision in *United States v. Kwiat*, 817 F.2d 440 (7th Cir. 1987). In *Kwiat*, defendant directors of a bank were charged with mail fraud in connection with the mailing of mortgage documents from the recorder's office. *Id.* at 443. Reversing the mail fraud convictions, the court found that the mailings: ... "[d]id not make the fraud possible or facilitate it. They did not help [defendants] take in money from the Bank; they did not reduce the quality of the intangible services [defendants] supplied to the Bank; they did not help [defendants] hide their debits or postpone the day of reckoning." *Id.* at 443. The court noted that whether each mortgage was recorded and returned had no relation to the charged scheme because no amount of trouble with the recorder's office would have alerted anyone to the director's scheme to defraud the bank of their honest services. *Id.*

The government argues, however, *Kwiat* is not dispositive because the nature of the schemes and purpose of the mailings in the instant case are markedly different. Unlike *Kwiat*, the government contends that the success of the defendants' scheme in the instant case depended on their ability to deceive the FHLBB examiners into believ-

ing the questioned loans were in compliance with all regulatory and statutory requirements. To present a false picture of compliance, defendants made sure all necessary documents were recorded and returned to their file. Had the form of the transactions not appeared to comply with regulatory requirements and safe and sound lending practices, the government contends scrutiny into the substance of the transactions would have occurred much earlier than the examiners' April 1983 investigation. Thus, in contrast to *Kwiat*, the government asserts a failure by the recorder of deeds to mail the recorded mortgages and their resulting absence from the loan files would have alerted the authorities.

This court agrees that *Kwiat* does not control the instant case. In *Kwiat*, the court found the primary deficiency of the mailings to be that: "Getting each mortgage recorded was unrelated to the directors defrauding the bank of their honest services." *Kwiat* at 444. The indictment in the present case, however, charges a much broader scheme to defraud and conceal, particularly with regard to the FHLBB examiners. Unlike *Kwiat*, where the mailings were attributed only to the directors' scheme to defraud the bank of its right to honest services, the mailings charged here relate to a scheme to defraud not only the bank, but also the FHLBB and FSLIC of their right to honest services.

According to the allegations in this case, FHLBB examiners began focusing on and criticizing defendants' activities concerning the increasing inventory of land held as nonincome earning assets and delinquent loans held as schedules items. Beginning in 1981 and continuing through 1983, examiners noted that certain land sale/loan transactions presently at issue were responsible for enhancing Heritage's overall financial status because they enabled the posting of large profits and the reduction of nonincome earning assets. Not until April 1983 did examiners discover the sham nature of transactions in question. Defendants' ability to conceal the true nature of the land sale/loan transactions from the examiners depended in part on maintaining a misleading appearance of regularity in Heritage's loan files. Had the mortgage documents not been returned from the recorder's office and placed in their proper files, examiners would have investigated, and defendants' alleged scheme would have been uncovered much sooner than April 1983.

Similar to the case at bar are the facts in *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). In *Lane*, the defendants were charged with conspiring to have certain buildings burned to collect insurance proceeds. *Id.* at ——, 106 S.Ct. at 727–28. After receiving a final settlement from the insurance company, the defendants mailed a proof-of-loss form to the insurer. *Id.* at ——, 106 S.Ct. at 733–34. The defendants argued that when irrevocable receipt of the insurance proceeds occurred, their scheme to defraud the insurer had come to fruition and no subsequent mailing could result in a violation of the mail fraud statute. *Id.* at ——, 106 S.Ct. at 733. Rejecting this argument, the Court ruled that statute extended to all delayed mailings designed to lull the victim into a false sense of security. *Id.* at ——, 106 S.Ct. at 734. Because failure to submit the proof-of-loss forms may have alerted the insurance company to the fraud, the Court ruled the jury could find the delayed mailing violated the mail fraud statute. *Id.*

As in *Lane*, the charged mailings in the present case occurred after the properties were sold and loan funds were disbursed. Similarly, defendants here allegedly lulled the FSLIC and FHLBB into believing the transactions responsible for sustaining the financial vitality of Heritage were legitimate by ensuring all normal documentation appeared in the loan files. Failure on the part of defendants to have the recorded documents appear in the loan files may have allowed examiners to discover the fraud prior to April 1983. Thus, as in *Lane*, the mailings charged in the instant case facilitated concealment of the scheme and are covered by the statute. Accordingly, defendants' motion to dismiss is denied.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Counts 3, 9, 10, 11, 12, 25, 26, and 27 of the indictment is denied.

IT IS SO ORDERED.